**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

Case No. 12-33942

GERALD L. MILLER

Debtor

**MEMORANDUM ON CONTESTED INVOLUNTARY PETITION,
MOTION TO DETERMINE VENUE, AND MOTION TO ALTER OR
AMEND ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

**APPEARANCES:**  GENTRY, TIPTON & MCLEMORE, P.C.
   Maurice K. Guinn, Esq.
   Post Office Box 1990
   Knoxville, Tennessee  37901

   Tyler C. Huskey, Esq.
   2430 Teaster Lane
   Suite 210
   Pigeon Forge, Tennessee  37863
   Attorneys for Petitioning Creditors Tennessee
   State Bank, Housholder Family Trust, and
   Charles A. and Melanie McGinnis

   SAMPLES, JENNINGS, RAY & CLEM, PLLC
   Thomas E. Ray, Esq.
   130 Jordan Drive
   Chattanooga, Tennessee  37421
   Attorneys for Debtor

   SAMUEL K. CROCKER, ESQ.
   UNITED STATES TRUSTEE
   Patricia C. Foster, Esq.
   Howard H. Baker, Jr. United States Courthouse
   800 Market Street
   Suite 114
   Knoxville, Tennessee  37902
   Attorneys for United States Trustee

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

Before the court are the following: (1) the contested Involuntary Petition commenced by Tennessee State Bank on September 28, 2012; (2) the Motion of Tennessee State Bank to Determine Venue for the Administration of the Debtor's Estate (Motion to Determine Venue) filed by Tennessee State Bank on October 11, 2012; and (3) the Respondent's Motion to Alter or Amend Order Denying Motion for Summary Judgment (Motion to Alter or Amend) filed by the Debtor on December 13, 2012.

The trial on the contested Involuntary Petition and Motion to Determine Venue was held on December 21, 2012. The record before the court consists of Stipulations filed by the parties on December 14, 2012, twenty-six stipulated exhibits that were introduced into evidence, and the testimony of four witnesses, James Housholder and Julia Housholder by deposition, Shelly Spurgeon, and Gerald L. Miller. Because the Motion to Alter or Amend filed by the Debtor did not allow sufficient time for a response and ruling prior to the trial, the court will dispose of it within this post-trial memorandum.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(A) and (O) (2006).

# I

This bankruptcy case was commenced on September 28, 2012, by the filing of an Involuntary Petition against Gerald L. Miller under Chapter 7 of the Bankruptcy Code by Tennessee State Bank, alleging that the Debtor is a person against whom relief may be granted, that he is generally not paying his debts as they become due, and that it is eligible to file the petition because, as of September 28, 2012, the Debtor owes $7,394,727.11 to Tennessee State Bank pursuant to thirteen

2

loans between it and the Debtor, either individually or as co-maker. On October 19, 2012, the Debtor filed his Answer to the Involuntary Petition, which he amended on October 24, 2012, contesting the Involuntary Petition and attaching a List of Creditors that, as amended, included twelve or more creditors. On November 8, 2012, four additional creditors, Housholder Family Trust, Sevier County Bank, Melanie McGinnis, and Charles A. McGinnis, filed notices of joinder or intervention as additional petitioning creditors. Because it did not qualify to be a petitioning creditor under 11 U.S.C. § 303(c), Sevier County Bank was subsequently dismissed as a qualifying petitioning creditor by an Order entered on December 6, 2012. By a separate Order entered on December 6, 2012, the court determined that because of the nature of their claim, Charles and Melanie McGinnis were to be considered as one petitioning creditor. The Debtor filed an Amended List of Creditors on December 7, 2012.

Notwithstanding the filing of the Involuntary Petition, the Debtor filed a Voluntary Petition commencing a Chapter 11 bankruptcy case, No. 12-06567, in the Middle District of Florida on October 5, 2012. Tennessee State Bank filed the Motion to Determine Venue on October 11, 2012, to which the Debtor filed the Debtor's Response to Tennessee State Bank's Motion to Determine Venue for Administration of the Debtor's Estate on October 24, 2012. Thereafter, on November 9, 2012, the Debtor filed a Motion for Summary Judgment That Tennessee State is Not Qualified as a Petitioning Creditor (Motion for Summary Judgment). Following the filing of the Response of Tennessee State Bank to Debtor's Motion for Summary Judgment on November 29, 2012, the court filed an Order and accompanying Memorandum on Motion For Summary Judgment That Tennessee State Bank is Not Qualified as a Petitioning Creditor (Memorandum Opinion) on December 7, 2012, denying the Motion for Summary Judgment. The Debtor filed his Motion to Alter or Amend on

December 13, 2012, arguing that the language of 11 U.S.C. § 303(b)(1), post-BAPCPA, precludes creditors from being petitioning creditors in an involuntary case when there is any factual or legal dispute as to any amount owed by the debtor on the creditors' claims.

As set forth in the Pretrial Order entered on November 5, 2012, the court was called upon to resolve the following issues as defined by the parties: (1) whether the Debtor had twelve or more creditors on September 28, 2012; (2) if so, whether Tennessee State Bank's claim is contingent as to liability or subject to a bona fide dispute as to liability or amount and is at least $14,425.00 greater than the value of any lien on property securing the claim; (3) if the Debtor had twelve or more creditors on September 28, 2012, whether there are three petitioning creditors whose claims are not contingent as to liability or subject to a bona fide dispute as to liability or amount whose claims aggregate at least $14,425.00 greater than the value of any lien on property securing the claim; (4) whether the Debtor is generally not paying his debts as they become due unless they are the subject of a bona fide dispute as to liability or amount; and (5) whether, in the interests of justice, the Debtor's bankruptcy case should proceed in this court or in the Middle District of Florida.

Pursuant to the Stipulations filed on December 14, 2012, the parties agree that the Debtor had twelve or more creditors on September 28, 2012, and that he was not, on that date, generally paying his debts as they became due. STIPULATIONS at ¶¶ 15-16. The parties also stipulate that Charles and Melanie McGinnis held an unsecured non-contingent claim in the amount of $35,000.00 against the Debtor on September 28, 2012, and that the Debtor does not rely on the counterclaim pending in the Sevier County Chancery Court in the action styled *Tennessee State Bank v. Miller*, No. 78CHI-2011-CV-407 11-9-407 (State Court Lawsuit) to create a bona fide dispute as to liability or amount as to

Tennessee State Bank's eligibility to be a petitioning creditor. STIPULATIONS at ¶¶ 17-18. Prior to trial, the Debtor announced that he no longer disputes venue as being proper in the Eastern District of Tennessee, thus resolving the Motion to Determine Venue. Accordingly, the court finds the only remaining issue to be whether the three petitioning creditors each hold claims that are not contingent as to liability or subject to a bona fide dispute as to liability or amount and whether such claims aggregate at least $14,425.00 more than the value of any lien on property securing such claims.

## II

As material to this contested Involuntary Petition, the Bankruptcy Code provides the following concerning the filing of an involuntary petition:

> (b) An involuntary case against a person is commenced by the filing . . . of a petition under chapter 7 . . . of this title –
>
>> (1) by three or more entities, each of which is . . . a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, . . . if such noncontingent, undisputed claims aggregate at least $14,425 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims[.]
>
> . . . .
>
> (h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed only if –
>
>> (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount[.]

11 U.S.C. § 303. The sole remaining issue with respect to § 303 is whether there are three petitioning creditors whose claims are not contingent as to liability or subject to a bona fide dispute as to liability or amount and whose claims aggregate at least $14,425.00 greater than the value of any

lien on property securing such claims. "The initial burden rests on the petitioning creditors to establish a prima facie case that their claims are not contingent and that no bona fide dispute exists regarding such claims." *In re Square at Falling Run, LLC*, 472 B.R. 337, 341 (Bankr. N.D. West Virginia 2012). The Debtor does not dispute that the McGinnises, collectively, are a qualified creditor with a qualifying claim in the amount of $35,000.00; however, the Debtor asserts that Tennessee State Bank and the Housholder Family Trust are not qualified to be petitioning creditors because there is a bona fide dispute as to the amount of Tennessee State Bank's claim against the Debtor and because the Housholder Family Trust's claim is not a pre-petition non-contingent claim.

### A

On December 7, 2012, the court filed its Memorandum Opinion and issued an Order denying the Motion for Summary Judgment filed by the Debtor on November 9, 2012. In both the Motion for Summary Judgment and the subsequently filed Motion to Alter or Amend, the Debtor argues that Tennessee State Bank is not a qualifying creditor because its claim is in bona fide dispute as to the amount. Rule 59(e) of the Federal Rules of Civil Procedure, applicable in this bankruptcy case pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure, states that "[a] motion to alter or amend a judgment shall be filed . . . no later than 14 days after the entry of the judgment." FED. R. CIV. P. 59(e). Relief under Rule 59 "is an 'extraordinary remedy and should be granted sparingly because of the interests in finality and conservation of scarce judicial resources.'" *Hamerly v. Fifth Third Mortgage Co. (In re J & M Salupo Dev. Co.)*, 388 B.R. 795, 805 (B.A.P. 6th Cir. 2008) (quoting *U.S. ex rel. Am. Textile Mfrs. Inst. Inc. v. The Limited, Inc.*, 179 F.R.D. 541, 547 (S.D. Ohio 1998)). "There are no standards for filing of such a motion set forth in Bankruptcy Rule 9023 or

Civil Rule 59; however, the courts have established four grounds for a motion to alter or amend a judgment:  (1) an intervening change in the controlling law; (2) newly discovered evidence; (3) to correct clear legal error; and (4) to prevent manifest injustice." *In re Gress*, 435 B.R. 520, 522-23 (Bankr. S.D. Ohio 2010) (citing *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 496 (6th Cir. 2006) and 12 MOORE'S FEDERAL PRACTICE ¶ 59.30[5][a] p.59-110 (3d ed. 2009)).

A motion under Rule 59 is not, however, "intended to provide the parties an opportunity to relitigate previously-decided matters or present the case under new theories[,]" and "[t]he burden of demonstrating the existence of a manifest error of fact or law rests with the party seeking reconsideration." *In re Nosker*, 267 B.R. 555, 564-65 (Bankr. S.D. Ohio 2001).  "A motion for reconsideration is not a vehicle to re-hash old arguments, or to proffer new arguments or evidence that the movant could have brought up earlier[,]" *Golden v. U.S. Bank Nat'l Ass'n, ND*, 2012 WL 4426525, at *1, 2012 U.S. Dist. LEXIS 137249 at *2-3 (E.D. Mich. Sept. 25, 2012), and "[t]ypically a motion for reconsideration that simply restates the same arguments will be denied." *J & M Salupo Dev. Co.)*, 388 B.R. at 805 (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)); *see also Carter v. Porter*, 2012 WL 298479, at *1 (E.D. Ky. Feb. 1, 2012) ("Motions for reconsideration likewise do not allow the losing party to attempt to supplement the record with previously available evidence.").  In short, consideration of a motion under Rule 59 does not allow the party to re-argue his case. *In re No-Am Corp.*, 223 B.R. 512, 514 (Bankr. W.D. Mich. 1998); *see also Mathis v. United States (In re Mathis)*, 312 B.R. 912, 914 (Bankr. S.D. Fla. 2004) ("The function of a motion to alter or amend a judgment is not to serve as a vehicle to relitigate old matters or present the case under a new legal theory . . . [or] to give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been

raised prior to judgment."); *Condor One, Inc. v. Homestead Partners, Ltd. (In re Homestead Partners, Ltd.)*, 201 B.R. 1014, 1018 (Bankr. N.D. Ga. 1996) (stating that a Rule 59 motion may not be "viewed as a means for overcoming one's failure to litigate matters fully."). Additionally, although Rule 59(e) refers to amendment of a "judgment," the court has an inherent power to reconsider and amend its interlocutory orders and may utilize Rule 59(e) as a vehicle for doing so. *Cincinnati Ins. Co. v. Crossman Cmtys., Inc.*, 2008 WL 2598550, at *2, 2008 U.S. Dist. LEXIS 49383, at *5 (E.D. Ky. June 26, 2008).

The Debtor has sought, through his Motion to Alter or Amend, to re-argue his case under the theory that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) substantially changed the requirement for petitioning creditors to establish that their claims are not the subject of a bona fide dispute, now disqualifying creditors when there is any dispute as to the amounts of their claims. Citing cases, the Debtor advances the argument, in summary, that

> [t]he phrase "as to liability or amount" was added to § 303(b)(1) and (h)(1) following the phrase "bona fide dispute" by [BAPCPA]. Prior to the amendment, a dispute limited to the amount was not a "bona fide dispute" as to the entire claim, at least under § 303(b)(1). . . . . As a result of the amendment, any dispute regarding the amount that arises from the same transaction and is directly related to the underlying claim should render the claim subject to a bona fide dispute.

MOT. TO ALTER OR AMEND at 3-4 (quoting *In re Reg'l Anesthesia Assocs., P.C.*, 360 B.R. 466, 469-70 (Bankr. W.D. Pa. 2007) (quoting *In re Euro-Am. Lodging Corp.*, 357 B.R. 700, 712 n.8 (Bankr. S.D.N.Y. 2007)). Based upon the foregoing authority, the Debtor argues that the court should find that any dispute as to amount is sufficient to disqualify Tennessee State Bank as a petitioning creditor.

In its December 7, 2012 Memorandum Opinion denying the Debtor's Motion for Summary Judgment, the court set forth in detail its reasons for determining that Tennessee State Bank's claim is not subject to a bona fide dispute and although the court did not specifically state that it was interpreting 11 U.S.C. § 303(b) as it exists post-BAPCPA, clearly it would not have interpreted the statute except as currently enacted. Additionally, even though it does not have to consider the arguments advanced by the Debtor in his Motion to Alter or Amend since he is attempting to make new arguments that he could have raised in his initial Motion for Summary Judgment, the court will nevertheless do so and holds that, notwithstanding the Debtor's arguments, the court does not agree that post-BAPCPA § 303(b) requires an all-or-nothing analysis: that the statutory language "as to liability or amount" should be read as meaning that any dispute as to any portion of the amount of a claim owed disqualifies a creditor from being a petitioning creditor.

The Bankruptcy Code defines "creditor" as "[an] entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[,]" 11 U.S.C. § 101(10)(A), and defines "claim" as:

> (A) [the] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) [the] right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). The Bankruptcy Court for the Southern District of Florida has held that "[t]he primary purpose of disqualifying a creditor whose claim is subject to a bona fide dispute from filing an involuntary bankruptcy petition is to prevent such creditors from using involuntary petitions as

a club to coerce the debtor to satisfy judgments when substantial questions may remain concerning the debtor's liability" and cited to the following legislative history for the 2005 amendments to § 303(b)(1) and (h):

> Sec. 1234. Involuntary Cases. Section 1234 of the Act amends the Bankruptcy Code's criteria for commencing an involuntary bankruptcy case. Current law renders a creditor ineligible if its claim is contingent as to liability or the subject of a bona fide dispute. *This provision amends section 303(b)(1) to specify that a creditor would be ineligible to file an involuntary petition if the creditor's claim was the subject of a bona fide dispute as to liability or amount. It further provides that the claims needed to meet the monetary threshold must be undisputed*. The provision makes a conforming revision to section 303(h)(1). Section 1234 becomes effective on the date of enactment of this Act and applies to cases commenced before, on, and after such date. H.R. REP. 109–31(I), 2005 U.S.C.C.A.N. 88 (emphasis added).

*In re Rosenberg*, 414 B.R. 826, 845-46 (Bankr. S.D. Fla. 2009). The legislative history does not, however, direct or indicate a Congressional intent that a creditor is ineligible to file an involuntary petition if its claim is only partially disputed or if it has multiple claims against an involuntary debtor, all of which must be undisputed, and the court declines to expand the plain language of the statute to accommodate the Debtor's interpretation to the contrary. Instead, the court agrees with the following holding made by the Bankruptcy Court for the Central District of Illinois:

> The statute does not, on its face, require a petitioner to hold a liquidated claim. The proof that is required is only that a claim exists which is of the type required and is in at least the amount required. For a bona fide dispute to be relevant, it must at least have the potential to reduce the total of petitioners' claims to an amount below the statutory threshold. *See In re Focus Media, Inc.*, 378 F.3d 916, 926 (9th Cir.2004), *cert. denied* 544 U.S. 968, 125 S. Ct 1742 (2005). Here, the existence of an unsecured, noncontingent, undisputed claim in an amount in excess of $12,300 is admitted. The statutory requirements have been met.

> Holdings argues that the recent changes made in the Bankruptcy Code demand a different result. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") added the phrase "as to liability or amount" to modify the phrase "bona fide dispute." 11 U.S.C. § 303(b)(1), (h)(1). Holdings argues that this

> amended language shows legislative intent to make any dispute as to amount a basis to deny entry of an order for relief. This Court disagrees.
>
> The legislative history from 1984 shows a Congressional intent that the addition of the "bona fide dispute" phrase to the statute originally was intended to cover disputes as to both liability and amount. See 130 Cong. Rec. S7618 (daily ed. June 19, 1984) (remarks of Sen. Baucus). The addition of the words "as to liability and amount" in the 2005 amendments is compatible with that original intent and no legislative history was found to suggest otherwise. Prior to BAPCPA, some courts faced with "bona fide dispute" questions focused principally on liability issues. *See, e.g. In re Seko Invs., Inc.*, 156 F.3d 1005, 1008 (9th Cir.1998), *cert. denied* 526 U.S. 1066, 119 S. Ct. 1458 (1999). Thus, the amendment appears to clarify the prior legislative intent. With the dearth of committee comments and legislative history available to interpret BAPCPA, this Court cannot presume that Congress added the phrase "as to liability and amount" with the intent that the claims of involuntary petitioners must now be fully liquidated either by agreement or judgment so that no dispute exists as to any portion of such claims. Without clear legislative intent, this Court cannot presume such a change in the law and declines to do so.

*In re DemirCo Holdings, Inc.*, 2006 WL 1663237, at *3, 2006 Bankr. LEXIS 1131, at *9 (Bankr. C.D. Ill. June 9, 2006); *see also In re Tucker*, 2010 WL 4823917, at *6, 2010 Bankr. LEXIS 3971, at *18 (Bankr. N.D. W.Va. Nov. 22, 2010) ("The better reasoned authority suggests that a petitioning creditor is not disqualified even if a bona fide dispute exists regarding a *portion* of its claim."). Similarly, Collier on Bankruptcy poses the following questions concerning the all-or-nothing analysis argued by the Debtor:

> Why would Congress want to disqualify a creditor whose claim is noncontingent and at least partially undisputed? Section 303's requirements regarding type and number of claims are an attempt to balance a debtor's interest in staying out of bankruptcy with the interest of creditors in putting a debtor into bankruptcy. Why shouldn't the undisputed, noncontingent portion of a petitioning creditor's claim count? Why disqualify the creditor in toto? Why effectively bar that creditor's access to the bankruptcy forum? Of course, as a practical matter, the prudent creditor will take the suggestion loudly whispered by some courts and simply assert the *un*disputed *non*-contingent portion of its claim.

2 COLLIER ON BANKRUPTCY ¶ 303.11[2] (16th ed. 2011). If the court were to adopt the all-or-nothing analysis the Debtor has argued, potentially no creditor would ever qualify to file an involuntary

11

petition because an involuntary debtor would simply have to raise some issue disputing the amount of the claim in order to defeat the involuntary petition.

Nevertheless, even applying the law as argued by the Debtor, in this case, Tennessee State Bank would still qualify as a petitioning creditor because the amount of its claim is not based upon one single transaction but rather, is the aggregate sum of thirteen separate loan transactions between the Debtor and Tennessee State Bank, and only loan no. xxx2406 dated November 10, 2010, in the principal amount of $2,880,000.00 would be considered in dispute.  Irrespective of the Debtor's statement in his Motion to Alter or Amend that "[w]hile there were no other loans for which no [sic] litigation was then pending, the affirmative defenses for which the Sevier County Chancery Court denied the Motion for Summary Judgment finding that the amount of liability was in dispute would likewise be applicable to all of the loans, whether suit had been filed or not[,]" MOT. TO ALTER OR AMEND at 2, the record is clear that the opposite is true.  As discussed in the court's Memorandum Opinion, the transcript of the June 15, 2012 hearing in the State Court Lawsuit contains not only an admission by the Debtor's attorney that the Debtor is still required to repay the original principal amount of loan no. xxx2406, notwithstanding the defenses raised by the Debtor, but also an acknowledgment that "none of [the remaining] notes [owed to Tennessee State Bank] to my knowledge are tainted by usury or fraud.  I don't have any defense for these." TRIAL EX. 14 at pg. 12, lines 1-3; *see also* pg. 12, lines 17-19. Additionally, even though Ms. Spurgeon testified that Tennessee State Bank considers all of the loans as part of the one relationship with the Debtor because the loans are cross-collateralized and cross-defaulted, it is immaterial because the loans are separate, made on different dates, for different amounts, and were made not only to the Debtor but to others as well, and Tennessee State Bank could, conceivably, forgive the Debtor of the amounts

due under loan no. xxx2406 and rely only on the aggregate balance of the remaining loans – or any single loan – as the basis for filing the Involuntary Petition against the Debtor. Because there is no real dispute as to the principal balance owed by the Debtor on loan no. xxx2406 or on the amounts owed on the other loans, all of which are separate transactions and any of which alone could form the basis for Tennessee State Bank's status as a petitioning creditor, Tennessee State Bank qualifies as a petitioning creditor.

The Debtor also states in his Motion to Alter or Amend that "it is the State's [sic] Court's determination that the affirmative defenses raised by the Respondent were sufficient themselves to create a genuine dispute as to the amount owed that is believed to be sufficient for this Court to find either as evidence or based on collateral estoppel that there is a bona fide dispute as to amount for the purposes of these proceedings." MOT. TO ALTER OR AMEND at 2. Under Tennessee law, collateral estoppel "bars the same parties or their privies from re-litigating in a later proceeding legal or factual issues that were actually raised and necessarily determined in an earlier proceeding . . . [whereby] that determination is conclusive against the parties in subsequent proceedings[,]" *Mullins v. State*, 294 S.W.3d 529, 534 (Tenn. 2009), applying "to issues of law and to issues of fact." *Gibson v. Trant*, 58 S.W.3d 103, 113 (Tenn. 2001). "[M]aterial facts or questions, which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and . . . such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties." *Booth v. Kirk*, 381 S.W.2d 312, 315 (Tenn. Ct. App. 1963) (citation omitted). The party asserting collateral estoppel "has the burden of proving that the issue was, in fact, determined in a prior suit between the same parties and that

the issue's determination was necessary to the judgment[,]" *Dickerson v. Godfrey*, 825 S.W.2d 692, 695 (Tenn. 1992) and must prove the following:

> (1) that the issue sought to be precluded is identical to an issue decided in an earlier proceeding; (2) that the issue sought to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding; (3) that the judgment in the earlier proceeding has become final; (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding; and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

*Mullins*, 294 S.W.3d at 535.  Clearly, collateral estoppel has no application here because, while the Chancellor overruled Tennessee State Bank's motion for partial summary judgment at the June 15, 2012 hearing, his ruling was never memorialized in an order nor are the issues identical, and thus, they were not actually raised, litigated, and decided on their merits.  For these reasons, the Debtor's Motion to Alter or Amend will be denied.

**B**

The Debtor also disputes that the Housholder Family Trust holds a qualified claim, arguing that its claim, based upon a thirty-year ground Lease for real property located at 3174 Parkway, Pigeon Forge, Tennessee, owned by the Trust, is contingent.  The Lease, which was executed on July 3, 1992 between Katherine Housholder, Marceil H. Perry, and James A. Housholder, collectively, as landlords, and Santo and Deborah Baiamonte as lessees, was subsequently assigned by the Baiamontes to the Debtor and his wife, Karen L. Miller, pursuant to an Assignment of Lease With Landlord's Consent dated July 13, 2004.  *See* TRIAL EX. 18; TRIAL EX. 19.  Also on July 13, 2004, the Millers executed an Assignment of Lease for Collateral Purposes, granting a lien in the rents owed to the Millers for the premises to Tennessee State Bank as collateral for a $600,000.00

loan, and a Landlord's Agreement With Lender, granting Tennessee State Bank the right to receive notice of any defaults in the Lease,[1] to cure any monetary defaults, and imposing limited obligations on Tennessee State Bank under the Lease in the event it became the tenant in possession. TRIAL EX. 20; TRIAL EX. 21. After the Millers defaulted on their lease payments in June 2011, Tennessee State Bank cured the defaults through a payment to the Housholder Family Trust in the amount of $11,479.24 on August 5, 2011, and thereafter began making payments to the Housholder Family Trust under the Lease in order to protect its collateral. The Debtor, however, remains the tenant under the Lease and maintains possession of the real property, a portion of which is occupied by Gerald L. Miller, Cove Mountain Realty, Inc., and a portion of which is subleased and occupied by a Baskin Robbins.

Courts have widely accepted the following standard when determining whether a claim is contingent as to liability:

> [C]laims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor at the time the event giving rise to the claim occurred.

*Square at Falling Run, LLC*, 472 B.R. at 341-42 (quoting *In re All Media Props., Inc.*, 5 B.R. 126, 133 (Bankr. S.D. Texas 1980)); *see also Rosenberg*, 414 B.R. at 826.

"A claim is a pre-petition claim within the scope of § 101(5)(A) if there was a relationship, existing pre-petition, between the debtor and the creditor such that the creditor could fairly contemplate the possibility of a claim against the debtor's bankruptcy estate at the time that the

---

[1] The landlords at this time were Katherine Housholder, Marceil H. Perry, and James A. Housholder and Julia P. Housholder, trustees of the Housholder Family Trust, dated November 28, 2000.

15

bankruptcy petition was filed." *In re Cleveland*, 349 B.R. 522, 531 (Bankr. E.D. Tenn. 2006); *accord In re Griffin*, 313 B.R. 757, 762-63 (Bankr. N.D. Illinois 2004) ("Under the Bankruptcy Code, a contract-based claim is a pre-petition claim if prior to filing the relationship between the debtors and the creditor contained all the elements necessary to create a right to payment under the relevant contract."); *Riverwood Int'l Corp. v. Olin Corp. (In re Manville Forest Prods. Corp.)*, 225 B.R. 862, 866 (Bankr. S.D.N.Y. 1998) ("Although the definition of claim is broad, the existence of a valid bankruptcy claim depends on (1) whether the claimant possessed a right to payment and, (2) whether that right arose before the filing of the petition.").

> In Tennessee, "[i]t is well established that a contract can be express, implied, written, or oral, 'but an enforceable contract must result from a meeting of the minds in mutual assent to terms, must be based upon sufficient consideration, must be free from fraud or undue influence, not against public policy and must be sufficiently definite to be enforced.'" *Thompson v. Hensley*, 136 S.W.3d 925, 929 (Tenn. Ct. App. 2003) (quoting *Klosterman Dev. Corp. v. Outlaw Aircraft Sales, Inc.*, 102 S.W.3d 621, 635 (Tenn. Ct. App. 2002)). Moreover, contracts are to be construed as of the date they are made and cannot be based upon events occurring subsequent to execution. *Allright Auto Parks, Inc. v. Berry*, 219 Tenn. 280, 409 S.W.2d 361, 364 (Tenn. 1966).

*In re Waldo*, 417 B.R. 854, 883 (Bankr. E.D. Tenn. 2009). Here, there is no dispute that the Debtor entered into a valid contract, i.e., the Lease, with the Housholder Family Trust. The question is whether the Lease created a contingent debt owed by the Debtor, to which the court without equivocation answers in the negative.

This Lease does not create a month-to-month obligation but is for a specific term – a period of thirty years, from July 3, 1992 through July 2, 2022 – and provides for a specific base rental of $45,000.00 annually, to be paid in twelve monthly installments and adjusted every three years according to increases in the cost of living index. TRIAL EX. 18 at ¶¶ 1, 3. There are no provisions

16

for lowering the annual rent nor does the Lease provide any basis for termination by the tenant. In fact, the Lease states that in the event of loss or destruction of the rental property, "[t]here shall be no abatement or reduction of the rent due on account of any such loss[,]" TRIAL EX. 18 at ¶ 10, and in the event of condemnation, the tenant's right to recover one-half of his investment in the property "does not include rents paid to owners nor any other expenses not directly related or apportionable to the erection of permanent improvements on the property." TRIAL EX. 18 at ¶ 12. Finally, with respect to default, which includes failure to pay either the base, adjusted, or additional rent, taxes, or insurance, the Lease states the following:

> In event of default, as defined above, by Tenant, the Landlords may, at their option, and without any additional notice of any kind, terminate this lease and go back into possession of said premises at any time thereafter. In such event, the term hereby granted shall wholly cease and expire in the same manner and with the same effect as if the date of said termination decided upon by Landlords had been the date originally fixed in this lease for the termination hereof, and the Landlords shall thereupon be entitled to the immediate possession of the leased premises and may institute summary proceedings therefor against the Tenant or may take any other suitable proceedings or actions to obtain possession thereof. The Tenant is to remain liable for any and all damages resulting to Landlords from such default, including, but not limited to, any difference in rent which the Landlords may receive for the rental of said property prior to the expiration of the term of this lease.

TRIAL EX. 18 at ¶ 16.

Under the terms of the Lease, the Millers, as tenants, remain obligated to the Housholder Family Trust for rent due each month through July 2, 2022. This obligation is not contingent upon any future occurrence but is a continuing obligation incurred by the Millers on July 13, 2004, when they executed the Assignment of Lease With Landlord's Consent, that may be terminated solely by the Housholder Family Trust. It is irrelevant whether either Mr. or Mrs. Housholder believes that, because Tennessee State Bank is paying the rents in order to protect its collateral, there is currently

17

no money owed under the Lease. As provided in the Landlord's Agreement With Lender, "[t]he purpose of this Landlord's Agreement is to establish the relationship between the Landlord and the Bank, and nothing contained in this Landlord Agreement shall modify the existing contract rights and obligations as between the Landlord and the Tenant nor the existing contract rights and obligations between the Bank and the Tenant/Borrower." TRIAL EX. 20 at ¶ 1. This is further reiterated within the Assignment of Lease for Collateral Purposes, which states, in material part, that:

> It is the intent of the parties hereto that this Assignment of Lease for Collateral Purpose shall be a portion of the security for a certain loan from the Bank to the Borrower . . . as well as for any and all other indebtedness of any nature whatsoever owing by Borrower to the Bank, now existing or hereafter incurred, of any nature whatsoever. In the event that Borrower shall default in the payment of such indebtedness to the Bank, or if the Borrower shall be in default under the terms and provisions of the aforesaid lease or be in default under the terms and provisions of any loan agreement, promissory note or other document or instrument evidencing or executed in connection with the principal indebtedness or any other such indebtedness, then, and in such event, the Bank may, at its option, without notice . . . declare this instrument to be immediately in effect, and shall thereafter have the power, right and authority to do and perform all acts and things in its own name or in the name of Borrower which could have been done or performed by Borrower under and pursuant to the terms and provisions of the aforesaid lease had this Assignment of Lease for Collateral Purposes not been executed or had the aforesaid default not taken place[.]
>
> . . . .
>
> It is further mutually understood and agreed that the exercise by the Bank of the option herein before granted to the Bank shall in no event be deemed to relieve Borrower of its obligations to the Bank or of its obligations pursuant to the terms and provisions of the aforesaid lease, and that Borrower shall be and remain liable for all such obligations.

TRIAL EX. 21 at ¶ 2.

The terms of the Lease govern whether or not the Housholder Family Trust's claim against the Debtor is contingent, and under the terms of the Lease, it is not. The Lease, which expires on

18

July 2, 2022, has nine and a half years remaining under its terms, which obligates the Debtor and his wife to the Housholder Family Trust for, at a minimum, the $45,000.00 annual base rent, or $3,750.00 for each of the remaining one hundred and fourteen months. Accordingly, the Household Family Trust likewise qualifies as a petitioning creditor because it holds a claim that is not the subject of a bona fide dispute as to liability or amount.

In summary, the Involuntary Petition will be sustained and an order for relief will be entered against the Debtor under Chapter 7; Tennessee State Bank's Motion to Determine Venue will be granted and, by agreement, the court shall direct, pursuant to Rule 1014(b) of the Federal Rules of Bankruptcy Procedure, that the Debtor's case shall proceed in the Eastern District of Tennessee; and the Debtor's Motion to Alter or Amend will be denied.

An Order consistent with this Memorandum will be entered.

FILED: January 9, 2013

BY THE COURT

/s/  RICHARD STAIR, JR.

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE